IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

QUINTONIO BODDIE,

       Defendant.

Cv. No. 09-2660-STA-tmp
Cr. No. 07-20371-STA

---

ORDER TO MODIFY THE DOCKET
ORDER GRANTING LEAVE TO AMEND
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On October 15, 2009, Defendant Quintonio Boddie, Bureau of Prisons register number 19159-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee, filed a *pro se* motion pursuant to 28 U.S.C. § 2255. (ECF No. 1.) On December 7, 2009, Defendant filed a supplement to his § 2255 motion. (ECF No. 2.) In an order issued an order on January 15, 2010, the Court directed the Government to respond to certain issues presented. (ECF No. 4.) On February 9, 2010, the Government filed its Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28

U.S.C. § 2255. (ECF No. 6.)[1] Defendant filed his Traverse to Government's Response to Movants [sic] 2255 Motion ("Reply") on March 15, 2010. (ECF No. 11.)

On February 16, 2010, Boddie filed a motion seeking copies of the transcripts of his trial and sentencing hearings. (ECF No. 9.) The Court issued an order on June 27, 2011, that, *inter alia*, granted that motion, directed the Clerk to mail copies of the transcripts to Defendant, and gave Defendant thirty-three (33) days from the date of mailing to submit any supplement he may have to his reply. (ECF No. 12- at 3-4.) Defendant did not file a supplement.

On November 16, 2012, Defendant filed a Motion to Amend Petitioner's 28 U.S.C. 2255 Motion Pursuant to Rule 15(c) of Federal Rules of Civil Procedure. (ECF No. 16.) For good cause shown, that motion is GRANTED. The Court will consider the matters presented in that filing.

On November 27, 2007, a federal grand jury in this district returned a single-count indictment charging Boddie, a convicted felon, with possession of ammunition in and affecting interstate commerce on or about July 7, 2007, in violation of 18 U.S.C. §

---

[1]    That filing was erroneously docketed as a response to an *in forma pauperis* motion. The Clerk is directed to modify the docket to accurately reflect this filing.

       The Government's response was due on February 8, 2010, and no motion for an enlargement of time was filed. The Court will, *in this instance only*, excuse the Government's late filing.

922(g)(1).[2] The factual basis for this charge is stated in the presentence report ("PSR"):

4. On or about July 7, 2007, officers were called to investigate a shooting that occurred at Ashton Hills Apartments in Memphis. Officers visited the victim, Cedric Wilson, at Methodist North Hospital, in Memphis, where he was being treated for a gunshot wound that he received. Upon arrival, the officers were advised that the victim was in critical but stable condition. Fortunately, no major arteries were hit. The officers spoke to the victim who stated he was shot by a man called Cillio (later identified as the defendant, ANTONIO BODDIE). The victim reported that he, Angela Jacocks (his girlfriend), Ben Harris and Paris Stephens (the defendant's girlfriend) were in the victim's apartment "getting high" when the defendant arrived at the apartment. Ms. Jacocks and Ms. Stephens asked the victim if it was okay for the defendant to come into the apartment since they had an argument four months prior to that date. The victim advised that it was fine for him to come into the apartment. After he entered the apartment, the defendant and the victim began to argue at which time the victim asked the defendant to leave the apartment. The victim stated that he and the defendant exited the apartment and went downstairs. Once downstairs, the victim reported that the defendant said "you about to die." At that time, the defendant grabbed him, hit him in the stomach, struck him in the face with the handgun and then shot him in the back. Witnesses (Angela Jacocks, Ben Harris and Paris Stephens) confirmed that the two men exited the apartment for what they thought was going to be a fistfight. The next thing they heard was a gunshot. The witnesses stated that Ms. Stephens ran down the stairs towards the vehicle. Once she reached the vehicle, Ms. Stephens was told by the defendant to get in.

5. Paris Stephens, the defendant's girlfriend, stated that after she heard the gunshot, she ran downstairs and saw the victim lying on the ground. She reported that her purse was in the defendant's truck, so she tried to retrieve it before he pulled off. She stated the defendant told her to get in the truck, and that she

---

[2] Indictment, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 1.

3

felt threatened because he had the gun sitting in his
lap. She stated that the defendant began beating her when
she got into the vehicle stating that if she hadn't been
at the apartment none of the events that took place would
not [sic] happened. Ms. Stephens reported that the
defendant took her to his house and forced her to have
sex with him. He then forced her back into the vehicle,
where they traveled to an unknown house. Once there, the
defendant spoke to a man that owed him money. An
altercation ensued, and the defendant shot at him. The
defendant's shots missed the man, and the man fled on
foot. The defendant got back into the vehicle and they
drove back to his house. Ms. Stephens reported that when
they arrived at the defendant's house, the defendant got
out of the vehicle to speak with individuals outside the
home. Ms. Stephens jumped out of the vehicle and ran to
a nearby store where she called a relative to pick her
up. Ms. Stephens reported that they went to a fire
station where the police were called. She reported that
she told the police about the defendant assaulting her,
but was too embarrassed to tell them about the forced
sex. She stated that she was then transported to 201
Poplar.

     6.   On July 9, 2007, the victim informed officers
that the defendant had been calling his girlfriend,
Angela Jacocks, threatening to go to the hospital and
kill the victim. That same day, the victim's mother
reported that the victim and the witnesses had received
death threats from the defendant[.]

     7.   Officers were unable to locate the defendant
until he reported in with his probation officer. The U.S.
Marshals Office had contacted the defendant's probation
officer and informed them [sic] that the defendant was
wanted as a possible suspect in a shooting. Only [sic]
July 18, 2007, when the defendant came in to report, his
probation officer informed him that he needed to report
to the Marshals office and was taken into custody without
incident.

     8.   It was determined that at the time of the
offense, the defendant was a convicted felon and that the
ammunition he possessed was not manufactured in the state
of Tennessee, and affected interstate commerce.

(PSR ¶¶ 4-8 (emphasis omitted).)

A jury trial commenced on July 14, 2008, and, on July 16, 2008, the jury returned a guilty verdict on the sole count of the indictment.[3] The Court conducted a sentencing hearing on November 17, 2008, at which Boddie was sentenced to a term of imprisonment of one hundred twenty (120) months, to be followed by a three-year period of supervised release.[4] Judgment was entered on November 18, 2008.[5] Boddie filed a notice of appeal but, on April 20, 2009, the United States Court of Appeals for the Sixth Circuit granted his motion to voluntarily dismiss the appeal. United States v. Boddie, No. 08-6416 (6th Cir. Apr. 20, 2009).

---

[3]    Min. Entry, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 29; Min. Entry, id., ECF No. 30; Min. Entry, id., ECF No. 32; Min. Entry, id., ECF No. 34; Jury Verdict, id., ECF No. 35; 07/14/2008 Trial Tr., id., ECF No. 51; 07/15/2008 Trial Tr., id., ECF No. 56; 07/16/2008 Trial Tr., id., ECF No. 50.

[4]    Min. Entry, id., ECF No. 46; Sentencing Hr'g Tr., id., ECF No. 52.

    Pursuant to § 2K2.1(a)(4)(A) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of ammunition is 20 if the defendant committed any part of the instant offense after sustaining one felony conviction of a crime of violence, in this case, Aggravated Assault. However, U.S.S.G. § 2K2.1(c)(1)(A) provides that, if the defendant used or possessed the firearm in connection with the commission of, or attempted commission of, another offense, § 2X1.1 (Attempt, Solicitation, or Conspiracy) should be applied in respect to that other offense if the resulting offense level is greater than that previously determined. Pursuant to U.S.S.G. § 2X1.1(a), the base offense level is the base offense level for the substantive offense plus any adjustments that can be established with reasonable certainty. The substantive offense in this case is Assault with Intent to Commit Murder/Attempted Murder, and the base offense level is 27. U.S.S.G. § 2A2.1(a)(2). Boddie received a two-level enhancement because the victim sustained serious bodily injury, U.S.S.G. § 2A2.1(b)(1)(B), and another two-level enhancement for obstruction of justice because he threatened the victim and a witness to the instant offense, U.S.S.G. § 3C1.1(a) application note 4(a), resulting in a total offense level of 31. Given his criminal history category of VI, the guideline sentencing range was 188-235 months. Boddie was sentenced to the statutory maximum sentence of 120 months.

[5]    J., United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 47.

In this § 2255 motion, Boddie raises the following issues:

1.  Whether his attorney rendered ineffective assistance, in violation of the Sixth Amendment;

2.  Whether 18 U.S.C. § 922(g) is unconstitutional;

3.  Whether his conviction was obtained through prosecutorial misconduct; and

4.  Whether his conviction was obtained through judicial misconduct.

(ECF No. 1 at 4, 6, 8 & 9.) In his amendment, which was filed on November 16, 2012, Boddie withdrew portions of his ineffective assistance claim and also added a new ground for that claim. (ECF No. 16.)

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See* Sunal v. Lange, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590, 91 L. Ed. 1982 (1947). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10, 96 S. Ct. 3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

Id.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th

Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." <u>Bousley v. United States</u>, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." <u>Id.</u> The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (quoting <u>Turner v. United States</u>, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Id.</u>

(quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)).

In his first issue, Defendant contends that his attorney rendered ineffective assistance, in violation of the Sixth Amendment. (ECF No. 1 at 4-5.) Specifically, Boddie contends that his attorney

> failed to properly defend by refusing to make an opening statement to explain justification of defendant's actions to jury; Counsel failed to request a jury instruction concerning the defense of necessity/compulsion; Counsel failed to help demonstrate re-enactment of events before the jury; Counsel failed to properly cross-examine witnesses during trial; Counsel failed to request instruction on government's burden of proof on defense of justification; Counsel limited advice to defendant concerning testimony; Counsel failed to properly defend by making only a perfunctory investigation before trial; Counsel never rehearsed testimony with defendant before or in preparation for trial nor discussed the legal advantage of silence wholly leaving to the untrained judgement of the defendant a vital choice of legal strategy; Counsel failed to present evidence that would've impeached witnesses testimony when requested to do so; Counsel failed to present objections to the Pre-Sentence Investigation Report no less than fourteen days before sentencing; Counsel failed to subject prosecution's case to meaningful adversarial testing; Counsel failed to investigate prosecution witnesses on voluntary intoxication; Counsel's lack of devotion to the interests of the accused; Counsel deceived and misled defendant by falsely informing him that the only way to seek new counsel for appeal purposes was to drop current appeal and refile with new counsel; Counsel deceived defendant as to the existence of appeal; Counsel's deliberate misinforming defendant about benefits and risks of going to trial; Counsel's failure to investigate all apparently substantial defenses to defendant and assert them in a proper and timely manner; Counsel gave erroneous advice to refuse plea agreement; Counsel refused to help with Rule 35 motion; Counsel failed to seek downward departure under 5K1.1; Counsel failed to review Jencks material; Counsel failed to present defense

promised during opening argument; Counsel failed to exercise professional judgment on behalf of client[.]

(Id.) In his Motion to Amend, which was filed on November 16, 2012, Boddie withdrew his claims that trial counsel gave "limited advice concerning testimony," had a "lack of devotion to the accused," and failed to seek a 5K1.1 motion. (ECF No. 16 at 1.) He also asserted, for the first time, that his lawyer was ineffective by disclosing the nature and circumstances of his prior convictions to the jury before reaching a stipulation with the Government that he was a convicted felon. (Id. at 1-2.)

Boddie's presentation of his ineffective assistance claim does not comply with Rule 2(b) of the § 2255 Rules, which require, *inter alia*, that the motion "shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, shall have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified."

> To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.[6]

---

[6] United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); *accord* Blackledge v. Allison, 431 U.S. 63, 75-76, 997 S. Ct. 1621, 1630, 52 L. Ed. 2d 136 (1977); Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil
(continued...)

The vague and conclusory allegations in support of portions of this ineffective assistance claim are insufficient to satisfy even the liberal notice pleading standards applicable to ordinary civil litigation. Boddie's claims that his attorney failed to properly cross-examine witnesses, made only a perfunctory pretrial investigation, did not rehearse Defendant's testimony, failed to present impeachment evidence, failed to make timely objections to the PSR, failed to subject the prosecution's case to meaningful adversarial testing, deliberately misinformed Defendant about the benefits and risks of going to trial, failed to investigate substantial defenses and to assert them in a timely manner, failed to review Jencks material, failed to present the defense promised in his opening statement, and failed to exercise professional judgment are presented with no factual support.

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of

⁶        (...continued)
Procedure] by requiring some fact pleading"); <u>Short v. United States</u>, 504 F.2d 63, 65 (6th Cir. 1974); <u>McGhee v. United States</u>, Nos. 1:04-cr-45, 1:07-cv-25, 2009 WL 5959994, at *2, *5 (E.D. Tenn. Mar. 6, 2009); <u>Curtis v. United States</u>, Nos. 1:06-cv-140, 1:30-cr-73, 2009 WL 123162, at *8 (E.D. Tenn. Jan. 14, 2009); <u>United States v. Kerr</u>, Nos. 95-80972, 03-72148, 2005 WL 1640343, at *2 (E.D. Mich. July 8, 2005).

reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S. Ct. 2052." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Srickland, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S. Ct. 2052." Richter, ___ U.S. at ___, 131 S. Ct. at 787-88; see also id. at ___, 131 S. Ct. at 791-72 ("In assessing prejudice

---

[7] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697, 104 S. Ct. at 2069.

under Strickland, the question is not whether a court can be
certain counsel's performance had no effect on the outcome or
whether it is possible a reasonable doubt might have been
established if counsel acted differently. . . . The likelihood of
a different result must be substantial, not just conceivable.")
(citations omitted); Wong v. Belmontes, 558 U.S. at 15, __, 130 S.
Ct. 383, 391-92, 175 L. Ed. 2d 328 (2009) (per curiam) ("But
Strickland does not require the State to 'rule out' [a more
favorable outcome] to prevail. Rather, Strickland places the burden
on the defendant, not the State, to show a 'reasonable probability'
that the result would have been different.").

"Surmounting Strickland's high bar is never an easy task."
Padilla v. Ky., 559 U.S. 356, ___, 130 S. Ct. 1473, 1385 (2010).

> An ineffective-assistance claim can function as a way to
> escape rules of waiver and forfeiture and raise issues
> not presented at trial, and so the Strickland standard
> must be applied with scrupulous care, lest "intrusive
> post-trial inquiry" threaten the integrity of the very
> adversary process the right to counsel is meant to serve.
> Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even
> under de novo review, the standard for judging counsel's
> representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant
> proceedings, knew of materials outside the record, and
> interacted with the client, with opposing counsel, and
> with the judge. It is "all too tempting" to "second-guess
> counsel's assistance after conviction or adverse
> sentence." Id., at 689, 104 S. Ct. 2052; see also Bell v.
> Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d
> 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113
> S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is
> whether an attorney's representation amounted to
> incompetence under "prevailing professional norms," not

whether it deviated from best practices or most common custom. <u>Strickland</u>, 466 U.S., at 690, 104 S. Ct. 2052.

<u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 788.

Although the Court directed the Government to respond to Defendant's claim that his attorney gave erroneous advice to refuse a plea agreement (ECF No. 4), the Court concludes, on further reflection, that Boddie has provided insufficient factual support for that issue. The motion contains no details about the alleged plea offer and it does not state that, were it not for his attorney's professionally unreasonable advice, he would have accepted the plea offer. Boddie's complaint about his his attorney's advice to reject a plea deal also appears to be inconsistent with his claim that his possession of ammunition was justified under the circumstances. If Boddie believed the justification defense in this case was valid, he necessarily would have had little incentive to accept a plea agreement.[8]

Boddie's unsworn Reply provides little additional information about the existence of a plea offer. He asserts that his attorney did not advise him that the Court could enhance his sentence using a preponderance of the evidence standard (ECF No. 11 at 3-4), but he does not explain the relevance of that fact to the decision of whether to go to trial. Although Boddie mentions that he could have

---

[8]    Although the Government did not produce an affidavit from Boddie's trial counsel, it has represented that trial counsel recalled that Boddie always intended to go to trial on the justification defense. (ECF No. 6 at 5-6.)

14

received a three-level reduction for acceptance of responsibility (id. at 4), he overlooks the fact that, as previously stated, the guideline sentence in this case was well over the 120-month statutory maximum. *See supra* p. 5 n.4. Even if Boddie received the full reduction for acceptance of responsibility, his total offense level would be 28 and, given his criminal history category of VI, the guideline sentencing range would be 140-175 months. Therefore, it appears that Boddie was not prejudiced by his rejection of a plea offer.

Boddie's additional argument suggests that there was not a plea offer but that, if he had known about the evidence that would be introduced at trial and the operation of the sentencing guidelines, he might have pursued "more vigorous plea negotiations." (ECF No. 11 at 4.) These assertions are fundamentally different from his original claim that a plea offer was made and his attorney recommended that it be rejected. This aspect of Boddie's ineffective assistance claim is without merit.

The Government was also directed to respond to Defendant's claims that trial counsel falsely advised him that the only way to obtain new counsel on appeal was to drop his current appeal and to refile it with new counsel. (ECF No. 4.) In its Answer, the Government noted that Boddie was facing both federal and state charges arising from the events at issue in this case. In addition to the federal charge of possessing ammunition, Boddie had been

charged with attempted second degree murder in the Criminal Court for Shelby County, Tennessee. (*See* PSR ¶ 43.) On April 16, 2009, Boddie filed a motion to withdraw his federal appeal and a waiver of appeal. (ECF No. 6-1.) That filing included a signed statement by Boddie that, "having discussed my appeal with my counsel, [I] desire to withdraw my appeal. While I understand that I have a statutory right to appeal my trial and sentencing, I have carefully considered my options and herewith request to be permitted to withdraw my appeal in the above case." (<u>Id.</u> at 3.) Boddie's waiver was made in consideration for an agreement with the State that, if he withdrew his federal appeal, his state charge of attempted second degree murder would be dismissed.[9] On April 20, 2009, the Sixth Circuit Court of Appeals granted Boddie's motion to voluntarily dismiss his appeal. <u>United States v. Boddie</u>, No. 08-6416 (Sixth Cir.). Also on April 20, 2009, the state charge of second degree murder was dismissed.[10]

Boddie takes issue with the Government's response, but his unsworn Reply makes little sense. (*See* D.E. 11.) Boddie says the decision to dismiss his federal appeal was predicated on counsel's misrepresentation that he would have to withdraw his appeal in order to substitute a different appellate counsel and that "the

---

[9]    *See* Tr. at 3-4, <u>State v. Boddie</u>, Case No. 07-20260 (Shelby Cnty. Crim. Ct. Apr. 15, 2009), ECF No. 6-1.

[10]    *See* Tr. at 4-5, <u>State v. Boddie</u>, Case No. 07-20260 (Shelby Cnty. Crim. Ct. Apr. 20, 2009), ECF No. 6-1.

state charges were deemed to be dropped way before an indictment ensued by the state." (Id. at 1.) He also asserts that his attorney knew that, once he signed the waiver and withdrew his appeal, the Federal Defender's Office would not assign him new counsel and, therefore, counsel's behavior was "deceitful and unprofessional." (Id. at 2.) The Waiver and Withdrawal of Appeal that Boddie signed makes clear that he is terminating his appeal. Boddie's assertion that only a criminal information was pending against him in state court when the charge was dismissed is false. According to the online docket for the Shelby County Criminal Court, Boddie was indicted on October 2, 2007, on a charge of attempted second degree murder.[11] The state-court transcript plainly states that the charges were dismissed in consideration for Boddie's agreement to withdraw his federal appeal.

Boddie plainly received substantial benefit from this agreement. The evidence presented at trial was overwhelming that Boddie shot the victim using a gun that he took out of his truck and that there was no struggle before the single shot was fired.[12] Although Boddie testified to a contrary version of events, the jury's verdict shows that they did not believe his testimony. Boddie makes no argument that, if only his appeal had continued,

---

[11]    See http://jssi.shelbycountytn.gov/ (Indictment Number 07 07260).

[12]    07/14/2008 Tr. 41-42, 59-61, 66-67, 80-81, 89, 110, United States v. Boddie, No. 07-20371 (W.D. Tenn.), ECF No. 51.

there is a reasonable probability that his conviction would have been reversed or his sentenced lowered.

The evidence introduced at the federal trial also put Boddie at substantial risk of a conviction for attempted second degree murder. Under Tennessee law, second degree murder is "[a] knowing killing of another." Tenn. Code Ann. § 39-12-210. "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b). Tennessee law provides the following definition for criminal attempt:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> > (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
> >
> > (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> >
> > (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

18

The victim, Cedric Wilson, testified at trial that Boddie told

him to get ready to die when he shot him.[13] Paris Stephens, Boddie's

girlfriend at the time, testified that, after the shooting, Boddie

said "he hoped they have his suit ready for him," which she

understood to mean that "[h]e need to get ready for a funeral."[14]

Had Boddie been convicted of the state charge, he faced a potential

sentence of twelve (12) to twenty (20) years as a Range II

Offender, with the possibility that that sentence could run

consecutive to his federal sentence. (*See* ECF No. 6 at 4.)[15]

This aspect of Boddie's ineffective claim is meritless.

Boddie also contends that his attorney was ineffective in

failing adequately to present a justification defense. "Under case

law in this circuit, a defendant in a prosecution for possession of

a firearm as a felon may assert the defense of necessity or

justification." United States v. Hargrove, 416 F.3d 486, 489 (6th

---

[13]    Id. at 81.

[14]    Id. at 123.

[15]    A sentence imposed by a Tennessee court runs consecutive to a federal sentence unless the trial judge expressly states otherwise. State v. Graham, 544 S.W.2d 921, 921-22 (Tenn. Crim. App. 1976); Tenn. R. Crim. P. 32(c)(2)(B) ("If, as the result of conviction in another state or in federal court, the defendant has any additional sentence or portion thereof to serve, the court shall impose a sentence that is consecutive to any such unserved sentence unless the court determines in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders. ").

    As previously noted, *see supra* p. 5 n.4, the sentencing guidelines provided a sentencing range of 188-235 months in this case. Boddie was sentenced to the statutory maximum sentence of 120 months on the federal charge. Thus, a state judge may well have concluded that Boddie's federal sentence did not adequately take into account the nature of his criminal conduct in the episode at issue.

Cir. 2005). "The justification defense for possession of a firearm by a felon should be construed very narrowly," United States v. Singleton, 902 F.2d 471, 472 (6th Cir. 1990), and the defense may arise only "in rare situations," id.

> Instructions on the defense are proper if the defendant has produced evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the following five circumstances exist:
>
> (1) defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and
>
> (5) did not maintain possession any longer than absolutely necessary.

Hargrove, 416 F.3d at 490 (alterations omitted). The Court instructed the jury on the justification defense.[16]

The basis for the justification defense in this case was Boddie's trial testimony that, as he was leaving the victim's apartment, the victim asked to borrow some money, he refused, and

---

[16]    Jury Instructions at 10, 17, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 36.

the victim followed him out while arguing with him.[17] Boddie attempted to leave, but the victim "was coming to me. So, I was stopping him, like — 'Man, what's up with you?['] Then when he came up to me, he tried to swing at me. Then when I blocked him, we kind of had a little hold off."[18] Stephens apparently ran upstairs "to go get Angela, or whatever."[19] At that point, defense counsel asked Boddie to step down to demonstrate what was happening, and he complied.[20] Boddie explained that he and the victim "were holding each other like and trying to wrestle."[21] Boddie testified that he did not have a gun and he did not know that the victim was armed.[22] According to Boddie, "When I shoved him up off of me and he kind of lost his balance. But then when he regained his balance he kind of stood to me and told me he was going to kill (inaudible) — and he went to reaching —"[23] Boddie contends that the victim reached with his right hand "[l]ike up under his shirt. And when he came out, I wrestling the grip, and when I was wrestling the grip, he kind of took it from me. And he wanted to try to wrestle back and get it

---

[17]    07/15/2008 Trial Tr. 75-76, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 56.

[18]    Id. at 78.

[19]    Id.

[20]    Id. at 79.

[21]    Id. at 80.

[22]    Id.

[23]    Id.

back. So, we both was wrestling when we turned into the car. That's when he got shot."[24] Boddie also said that "[b]oth of us kind of fell into the car because we was trying to wrestle. And after he got shot, I ran and jumped in the truck."[25] According to Boddie, "[w]hen we fell into the car, the gun went off."[26] When asked who had their hand on the gun, Boddie said that "[b]oth of us did" and that it is "hard to say" who had the gun in his hand.[27] Boddie testified that he did not intend to shoot the victim and that he was "[t]rying to save my life."[28] He explained that "I've been shot twice, I wasn't trying to get shot no more."[29] When the victim took out the gun, Boddie "thought he was trying to kill me. I mean, my whole life had flashed before my eyes."[30] Boddie said he could not have run because "he might would have killed me then."[31] Boddie testified that he believed that "I had to get control of it or get it away from him."[32] When Boddie left, the victim was laying on the

---

[24]  Id. at 81.

[25]  Id.

[26]  Id.

[27]  Id.

[28]  Id.

[29]  Id.

[30]  Id. at 82.

[31]  Id.

[32]  Id.

ground.[33] Boddie "knew he was still alive."[34] Boddie took the gun with him when he left and "threw it in the river on my way home."[35] Boddie admitted that he was aware that he was not supposed to have a gun.[36]

Although the jury perhaps could have concluded that Boddie's possession of the ammunition was justified, Boddie's testimony was not supported by any of the other individuals who were present. *See supra* pp. 17, 19. Boddie's defense was further undermined by Stephens' testimony that, shortly after fleeing from the scene of the shooting, Boddie used the firearm to shoot at someone else.[37]

Boddie has not satisfied his burden of establishing either deficient performance or prejudice. He has not specified anything that his lawyer failed to do in her presentation of the defense, and he has not established that, if only she had performed better, there is a reasonable probability that the outcome of the trial would have been different. This aspect of the first issue is without merit.

Boddie withdrew his claim that his attorney "limited advice to defendant concerning testimony" (ECF No. 16 at 1), so it is unclear

---

[33]    Id. at 83.

[34]    Id.

[35]    Id.

[36]    Id. at 84.

[37]    07/14/2008 Tr. 128, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 51; 07/16/2008 Tr. at 45-46, 49-50, id., ECF No. 50.

whether he still contends that his attorney "never rehearsed testimony with defendant before or in preparation for trial nor discussed the legal advantage of silence wholly leaving to the untrained judgment of the defendant a vital choice of legal strategy." (ECF No. 1 at 5.) The trial transcript reflects that defense counsel conducted a *voir dire* examination of Boddie concerning his decision to testify.[38] Boddie acknowledged that he had discussed the decision whether to testify with his attorney several times during preparations for the trial and that his attorney advised him about the advantages and disadvantages of testifying.[39] Boddie stated that he planned to testify, that it was his own decision, and that nobody was forcing him to testify.[40] Boddie's motion also does not state that, if only his attorney had given him better advice, there is a reasonable probability that he would have decided not to testify. Notably, had he decided not to testify, Boddie would have been unable to present the justification defense that he highlights in his § 2255 motion.

Boddie's claim that defense counsel did not rehearse his testimony is entirely devoid of factual detail. Boddie does not identify any statements he made during trial that he attributes to a failure to rehearse and he makes no argument that, if only he had

---

[38]    07/15/2008 Tr. 67-68, <u>United States v. Boddie</u>, No. 07-20371-STA (W.D. Tenn.), ECF No. 56.

[39]    <u>Id.</u>

[40]    <u>Id.</u> at 68.

been better prepared to testify, there is a reasonable probability that the outcome of the trial would have been different.

In his Motion to Amend, which was filed on November 16, 2012, Boddie asserted that his attorney was ineffective by disclosing the nature and circumstances of his prior convictions to the jury before reaching a stipulation with the Government that he was a convicted felon. (ECF No. 16 at 1-2.) Boddie relies on the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172, 174, 117 S. Ct. 644, 647, 136 L. Ed. 2d 574 (1997), which held that a district court abuses its discretion if it declines to allow a defendant who is charged with violating 18 U.S.C. § 922(g) to stipulate that he is a convicted felon and, instead, admits the record of the prior judgment, including the nature of the offense. The decision in Old Chief did not address the use of prior convictions for impeachment when a defendant chooses to testify. Even after Old Chief, evidence of a defendant's prior convictions may be admitted for impeachment purposes if he decides to testify. United States v. Kemp, 546 F.3d 759, 763 (6th Cir. 2008); United States v. Ledford, ___ F. App'x ___, ___, 1997 WL 659673, at *4 (6th Cir. 1997); see also Emerick v. Prelesnik, 491 F. App'x 639, 645 (6th Cir. 2012) (in § 2254 case, distinguishing Old Chief from case in which prior convictions were admitted for impeachment), cert. denied, ___ U.S. ___, 133 S. Ct. 942, ___ L. Ed. 2d ___ (2013).

Boddie has misstated the relevant sequence of events at trial. At the close of the first day of trial, the Government read a stipulation that, before July 7, 2007, Boddie had been convicted of a crime punishable by imprisonment for a term exceeding one year.[41] Because Boddie chose to testify at trial, certain prior convictions were admissible for impeachment purposes. Fed. R. Evid. 609. During direct examination, Boddie testified that he threw the gun in the river "because I knew I wasn't supposed to have it."[42] At that point, the following exchange occurred:

> Q.   You knew you weren't supposed to have it because why?
>
> A.   Because I just got out of jail for it.
>
> Q.   For having a gun?
>
> A.   Yes, ma'am.
>
> Q.   And that is because you have a felony conviction?
>
> A.   Yes, ma'am.
>
> Q.   What kind?
>
> A.   Possession of a firearm, aggravated assault, attempt to evading arrest in an auto.[43]

---

[41]   07/14/2008 Tr. 166-67, <u>United States v. Boddie</u>, No. 07-20371-STA (W.D. Tenn.), ECF No. 51.

[42]   07/15/2008 Tr. 84, <u>id.</u>, ECF No. 56.

[43]   <u>Id.</u> at 84-85.

Boddie also testified that he pled guilty to a prior federal gun possession charge because "I plead guilty every time when I'm guilty."[44]

When a conviction is admissible for impeachment purposes, defense attorneys sometimes prefer to elicit that information on direct examination. In this case, the Government asked about each of the prior convictions mentioned by Boddie on cross examination:

> Q.    Are you the same Quintonio Boddie that was convicted of theft of property over a thousand and evading arrest on October 30 of 2000?
>
> A.    Yes.
>
> Q.    The same Quintonio Boddie who was convicted on July 30, 2002, of aggravated assault?
>
> A.    Yes.
>
> Q.    And the same Quintonio Boddie that was convicted September the 5th of 2003 for being a convicted felon in possession of a firearm?
>
> A.    Yes, ma'am.[45]

At the conclusion of the trial, the Court gave a limiting instruction.[46]

Because Boddie cannot show deficient performance or prejudice, this issue is meritless.

---

[44]    Id. at 85.

[45]    Id. at 88.

[46]    Jury Instructions 14-15, United States v. Boddie, No. 07-20371-STA (W.D. Tenn.), ECF No. 36.

For all of the foregoing reasons, the first issue is without merit and is DISMISSED.

In his second issue, Boddie argues that 18 U.S.C. § 922(g) is unconstitutional. (ECF No. 1 at 6.) As support for this issue, the motion asserts the following:

> Statute under which defendant has been convicted is violative of the privilege against self-incrimination.
>
> The indictment against defendant is constitutionally vulnerable because it rests on a federal statute which, by its registration provisions, calls for self-incrimination, and infringes on the priviledge [sic] to keep and bear arms.

(Id. at 6.)

This issue is not cognizable in a motion pursuant to 28 U.S.C. § 2255 because it is properly raised on direct appeal. *See supra* pp. 7-8. Boddie has not attempted to show cause for his failure to raise this issue before entry of judgment or on direct appeal.[47]

Boddie's substantive argument is also meritless. Boddie was charged with possessing ammunition, not with violation of a firearms registration statute, and, therefore, this case presents no issue about the right against compulsory self-incrimination. Moreover, the Sixth Circuit Court of Appeals has held that the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), does not

---

[47] Boddie's decision to withdraw his appeal does not constitute cause. *See* Rivera v. Warden, FCI Elkton, 27 F. App'x 511, 515 (6th Cir. 2001) (an appeal waiver provision in a plea agreement bars review in a § 2255 motion or § 2241 petition of issues required to be raised on direct appeal).

invalidate convictions for possession of firearms or ammunition under 28 U.S.C. § 922(g). <u>United States v. Whisnant</u>, 391 F. App'x 426, 430 (6th Cir. 2010); <u>United States v. Khami</u>, 362 F. App'x 501, 507-08 (6th Cir. 2010); <u>United States v. Frazier</u>, 314 F. App'x 801, 806-07 (6th Cir. 2008).

The second issue is without merit and is DISMISSED.

In his third issue, Boddie argues that the Government engaged in prosecutorial misconduct by "allow[ing] the perjured testimony of government witnesses, which prejudiced the outcome of the trial verdict." (ECF No. 1 at 8.) Specifically, "[t]he prosecution failed to present defense with adequate notification of its intention to use Detective Byars as [a] witness before trial." (<u>Id.</u>) Boddie further contends that "[t]he prosecution failed to make a positive connection with spent shell casing and spent round, therefore prejudicing the defendant's trial by confusing the jury." (<u>Id.</u>)

This issue is not cognizable in a § 2255 motion because it could have been raised on direct appeal. *See supra* pp. 7-8. This rule applies to claims arising from the Government's use of allegedly perjured testimony at trial. <u>Page v. United States</u>, Nos. 298-CR-06, 208-CV-32, 2007 WL 1002515, at *4 (E.D. Tenn. Mar. 30, 2007). Boddie voluntarily withdrew his direct appeal and,

consequently, lost his right to litigate this issue.[48] The third issue is without merit and is DISMISSED.

In his fourth issue, Boddie contends that the Court committed judicial misconduct by allowing Paris Stephens to testify to uncharged conduct shortly after Boddie shot the victim, by imposing various sentencing enhancements, by failing to rule on a motion for a judgment of acquittal, and by allowing the testimony of a witness who was not on the Government's witness list. (ECF No. 1 at 9-10.) These issues are waived due to Boddie's decision to withdraw his direct appeal. *See supra* pp. 7-8. The fourth issue is without merit and is DISMISSED.

Because every issue presented by Defendant has been dismissed, his motion pursuant to 28 U.S.C. § 2255 is DENIED. Judgment shall be entered for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R.

---

[48] Boddie has not identified any witness who committed perjury and has not attempted to show that the Government knowingly introduced perjured testimony. Detective Byars testified as a rebuttal witness to counter Boddie's testimony that the police did not give him a chance to tell his side of the story. *See* 07/16/2008 Tr. at 55-57, United States v. Boddie, No. 07-20371 (W.D. Tenn.), ECF No. 50. Defendant has made no colorable argument that the Government committed misconduct in connection with the testimony of Memphis Police Officer Bobby Alston about the shell casing.

App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citation omitted); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337, 123 S. Ct. at 1039; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, the issues raised by Defendant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[49]

IT IS SO ORDERED this 27th day of March, 2013.

---

[49]     If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE